**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 6, 2020**

# In the Court of Appeals of Georgia

A20A1093. THE RAINMAKER GROUP VENTURES, LLC v. BELLACK.

BARNES, Presiding Judge.

Following the grant of its application for interlocutory appeal, the Rainmaker Group Ventures, LLC ("Rainmaker") appeals the trial court's order denying its motion for summary judgment on Lawrence J. Bellack's claim for breach of the implied covenant of good faith and fair dealing under Delaware law. For the reasons discussed below, we conclude that, as a matter of Delaware law, the implied covenant of good faith and fair dealing does not supply a viable theory of recovery because the written contract between the parties expressly addressed the conduct at issue. Accordingly, we reverse the trial court's order denying Rainmaker's motion for summary judgment on Bellack's implied covenant claim.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). On appeal from the denial of summary judgment, we construe the evidence and all inferences therefrom in the light most favorable to the nonmoving party. (Punctuation and footnote omitted.) *McLemore v. Genuine Parts Co.*, 313 Ga. App. 641, 641 (722 SE2d 366) (2012). Guided by these principles, we turn to the record in the present case.

*Factual Background.* Rainmaker was a Delaware limited liability company that provided revenue optimization software to companies in several industries. Bellack served as a vice president at Rainmaker from March 2010 until his termination on December 1, 2015.

While working for Rainmaker, Bellack received shares of common stock governed by an Amended and First Restated Limited Liability Company Agreement dated October 18, 2012 ("LLC Agreement"). The LLC Agreement stated that "[t]his

2

LLC Agreement, the rights of the parties hereunder, and any disputes between the parties, shall be governed by, construed, and enforced in accordance with the laws of the State of Delaware, without regard to its conflicts of laws rules."[1]

After Bellack was terminated in 2015, Rainmaker retained a right to repurchase his vested shares of stock under the LLC Agreement. The LLC Agreement provided that if Rainmaker chose to repurchase the shares of a former employee, its Board of Managers ("Board") would "determine[ ] in good faith" the "Fair Value" of the shares ("Fair Value Provision").[2] In valuing the shares, the Board was required to "assume that the enterprise value of [Rainmaker] [was] equal to the amount which would be paid in cash for [Rainmaker], as a going concern, by an unaffiliated third party buyer" and to take into account the economic characteristics of each class of company shares, but the Board also had discretion to consider additional factors, and its ultimate determination of fair value was "final, binding, and nonappealable."

---

[1] The parties do not dispute on appeal that the substantive legal issues raised in this case are governed by Delaware law.

[2] If an employee was terminated for "cause" or voluntarily resigned after less than two years of employment, his or her shares were automatically forfeited under the LLC Agreement without any further action by Rainmaker. Neither of those circumstances applied here.

3

In addition to the Fair Value Provision, the LLC Agreement contained a "clawback" provision that afforded protection to a former employee if Rainmaker were to "effect" a "transaction" that resulted in a higher price per share within three months of the closing date when the employee's shares were repurchased (the "Clawback Provision"). The Clawback Provision stated:

> If the Company elects to exercise its right to purchase Subject Shares of a Subject Shareholder pursuant to [the Fair Value Provision], or pursuant to an Other Agreement, and within three (3) months after the date of the closing of such purchase Subject Shares, the Company effects a Transaction or Public Offering which results in a consideration per Share which is greater than the per Share consideration received by the Subject Shareholder in respect of the FV Shares, the Company will, at the closing of such Public Offering or Transaction, pay the Subject Shareholder, in the same form of consideration received in such transaction, or in cash in the case of a Public Offering, an amount sufficient to equalize, on a pre-tax basis, the difference between the Call Price and the amount that would have been received by the Subject Shareholder in respect of the FV Shares in the Transaction or the per Share price to the Company in the Public Offering.

A "transaction" was defined in part as a "sale or transfer . . . of a majority of the assets of [Rainmaker]." The LLC Agreement did not define the word "effects."

Following Bellack's termination, in a letter dated October 7, 2016, Rainmaker notified Bellack that pursuant to the Fair Value Provision, it planned to repurchase his shares for $1,565,904 based on the Board's valuation of those shares. On

4

November 7, 2016, Rainmaker issued a promissory note to Bellack to repurchase his shares in the aforementioned amount plus interest.

In December 2016 and January 2017, Rainmaker and one if its competitors, RealPage, Inc., exchanged correspondence regarding RealPage acquiring Rainmaker. The parties dispute whether Rainmaker and RealPage formed a binding agreement in January 2017 based on their correspondence. On February 27, 2017, Rainmaker and RealPage executed an Asset Purchase Agreement ("APA") under which Rainmaker agreed to sell a majority of its assets, including certain optimization software, to RealPage for $300 million. However, the RealPage deal was subject to review by the United States Department of Justice ("DOJ"), and the DOJ review was one of the conditions of closing on the deal.

In March 2017, after Bellack contacted Rainmaker inquiring whether the Clawback Provision would apply to the RealPage deal and would result in the readjustment of the price of his repurchased shares, Rainmaker informed him by letter that the closing with RealPage had not yet occurred. Rainmaker further asserted in its letter that the Clawback Provision applied only if a transaction was "consummated" within three months of the repurchase of shares, and that, as a consequence, the Clawback Provision did not apply to the RealPage deal because it had not been

consummated within three months of when the promissory note was issued to Bellack.

On December 4, 2017, Rainmaker and RealPage closed on their deal shortly after obtaining DOJ approval. Rainmaker paid off Bellack's promissory note the next day. In light of its conclusion that the Clawback Provision did not apply, Rainmaker did not adjust the price per share owed to Bellack based on the RealPage deal.

*Procedural Background.* In September 2017, before the RealPage deal closed, Bellack filed this action against Rainmaker in the Superior Court of Fulton County, and in his complaint, as amended, he alleged that Rainmaker's Board had failed to determine the fair value of his repurchased shares accurately and in good faith in accordance with the LLC Agreement.[3] Bellack asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and attorney fees and expenses.

Rainmaker filed a motion to dismiss the complaint or, alternatively, for judgment on the pleadings. Applying Delaware law, the trial court granted

---

[3] Bellack previously filed a complaint in federal court against Rainmaker, asserting several claims that were similar to the claims raised in this case. The federal action ultimately was dismissed for lack of diversity jurisdiction.

Rainmaker's motion to dismiss Bellack's claims for breach of contract, promissory estoppel, and unjust enrichment.[4] The trial court, however, denied Rainmaker's motion to dismiss Bellack's claim for breach of the implied covenant of good faith and fair dealing to the extent that it was predicated on alleged "contractual gaps" in the Clawback Provision of the LLC Agreement. The trial court reasoned:

> Bellack has alleged that contractual gaps exist in the LLC Agreement. For example, the Clawback Provision is a clause in the LLC Agreement that protects the shareholder from the Board assigning a lowball value in anticipation of some transaction that will increase the value of Rainmaker's shares. According to the Provision, if a transaction is "effected" within ninety days of the closing of the repurchase, Bellack would be entitled to any increased value per share realized in the transaction. Bellack alleges that the phrase "effects a transaction" is ambiguous. If a transaction were "effected' [in January 2017], the deal would fall within the Clawback period, but if it was only "effected" after the APA was signed [on February 27, 2017], the transaction falls outside of the Clawback period. Depending on the interpretation of the phrase and the duties implied therein, [Bellack] may be entitled to damages commensurate with breach of the implied covenant of good faith and fair dealing [under Delaware law].

---

[4] The dismissal of those claims is not before us.

Because the LLC Agreement is unclear, the Court must make a determination and fill in the gaps. According to Bellack, the Clawback Provision is evidence of the intent of the parties to provide the shareholder with protection from this type of action by Rainmaker. Construing the pleadings in . . . Bellack's favor and taking the contract to be ambiguous in some of its terms, it is possible for [Bellack] to introduce evidence to support this claim. As such, . . . Rainmaker[']s Motion to Dismiss is DENIED as to the claim for breach of implied covenant of good faith and fair dealing.

Rainmaker later filed a motion for summary judgment, arguing, among other things, that the implied covenant of good faith and fair dealing did not provide a viable theory of recovery under the circumstances because the express terms of the Clawback Provision covered the parties' dispute. The trial court disagreed, concluding that"[t]here still remains a level of ambiguity with regards to the meaning of disputed contract terminology and construction," such that Bellack could proceed forward on his implied covenant claim.[5] The trial court, however, certified the issue

---

[5] The trial court also struck an expert affidavit submitted by Rainmaker in support of its summary judgment motion. Rainmaker does not enumerate that ruling as error on appeal.

for immediate review, and Rainmaker filed a timely application for interlocutory appeal, which we granted. This appeal followed.

Rainmaker contends that the trial court erred in denying its motion for summary judgment on Bellack's claim for breach of the implied covenant of good faith and fair dealing under Delaware law because the implied covenant is inapplicable in this case. We conclude that, as a matter of law, the implied covenant does not apply in the circumstance that Bellack seeks to invoke it here and that the trial court's summary judgment ruling thus was erroneous.

"The implied covenant of good faith and fair dealing inheres in every contract governed by Delaware law and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." (Citation and punctuation omitted.) *Airborne Health v. Squid Soap*, 984 A2d 126, 145-146 (II) (D) (Del. Ch. 2009). See *Miller v. FiberLight*, 343 Ga. App. 593, 607 (4) (808 SE2d 75) (2017) (applying Delaware law). "The implied covenant of good faith and fair dealing involves inferring contractual terms to handle developments or contractual gaps that neither party anticipated." (Punctuation and footnote omitted.) *Nationwide Emerging Managers v. Northpointe Holdings*, 112 A3d 878, 896 (IV) (E) (Del. 2015). But "the

9

covenant is a limited and extraordinary legal remedy." (Punctuation and footnote omitted.) *Oxbow Carbon & Minerals Holdings v. Crestview-Oxbow Acquisition*, 202 A3d 482, 507 (IV) (B) (Del. 2019). And "it is not an exception to the rule that courts will not alter the terms of a bargain sophisticated parties entered into willingly because a party now regrets the deal." *Alliance Data Sys. Corp. v. Blackstone Capital Partners V*, 963 A2d 746, 770 (III) (D) (Del. Ch. 2009). Hence, "[t]he implied covenant does not apply when the subject at issue is expressly covered by the contract." (Citation and punctuation omitted.) *Airborne Health*, 984 A2d at 146 (II) (D). See *Oxbow Carbon & Minerals Holdings*, 202 A3d at 507 (IV) (B) (pointing out that "the implied covenant does not apply when the contract addresses the conduct at issue, but only when the contract is truly silent concerning the matter at hand") (punctuation and footnote omitted); *Alliance Data Sys. Corp.*, 963 A2d at 770 (III) (D) (noting that "the implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purpose reflected in the express language of the contract").

In the present case, the parties' dispute over whether the price of Bellack's repurchased shares should be upwardly adjusted in light of the RealPage deal is

10

clearly governed by the terms of the Clawback Provision in the LLC Agreement. Hence, the subject at issue is expressly covered by the parties' contract, and the implied covenant is inapplicable under Delaware law. See *Oxbow Carbon & Minerals Holdings*, 202 A3d at 507 (IV) (B); *Airborne Health*, 984 A2d at 146 (II) (D); *Alliance Data Sys. Corp.*, 963 A2d at 770 (III) (D). Bellack's "implied covenant claim is premised on the failure of [Rainmaker] to pay money due under the contract, [and, therefore,] the claim must fail because the express terms of the contract will control such a claim. Again, the implied covenant cannot be invoked to override express provisions of a contract."[6] *Kuroda v. SPJS Holdings*, 971 A2d 872, 888 (II) (E) (Del. Ch. 2009). Thus, Rainmaker's "refusal to pay was either a breach of the [Clawback] Provision or not a breach at all." *Nationwide Emerging Managers*, 112 A3d at 896 (IV) (E). Accordingly, to the extent that Bellack had a viable cause of action, it was

---

[6] Bellack does not claim that Rainmaker manipulated the timing of its deal with RealPage unreasonably, arbitrarily, and in bad faith so as to technically comply with the express terms of the Clawback Provision but deprive Bellack of his legitimate expectations of higher payment under that Provision. Compare *Keating v. Applus+ Technologies*, No. CIV. A. 08-3320, 2009 WL 261091, at *4, 2009 U.S. Dist. LEXIS 8028, at *12-13 (E.D. Pa. Feb. 4, 2009) (holding that implied covenant claim was viable under Delaware law where the plaintiffs alleged that the defendant company, "acting in bad faith, arbitrarily and unreasonably, . . . engaged in a concerted effort to delay the bidding process" so that a new contract would not be entered into during the time period when the plaintiffs would have been contractually entitled to a share of the revenue from that contract).

a breach-of-contract claim for breach of the Clawback Provision, which Bellack failed to pursue, rather than an implied covenant claim.

In ruling that Bellack could proceed with an implied covenant claim, the trial court concluded that the phrase "effects a Transaction" in the Clawback Provision was ambiguous and that, as a result of the parties' failure to include a definition of that phrase in the LLC Agreement, there was a contractual gap that authorized an implied covenant claim. However, whether there is an ambiguity in the meaning of an undefined term of a contract is a separate question from whether a contract has a gap that needs to be filled by an implied term.

> When presented with a claim under the implied covenant, the first step in the analysis is to determine whether there is a gap that needs to be filled. Scholars refer to this step as the process of contract construction, which is distinct from the process of contract interpretation. Interpretation is the process by which a court resolves ambiguity in the express terms of a contract. By contrast, construction is the process by which a court determines the scope and legal effect of those terms. Through the process of contract construction, a court determines whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject, revealing a gap that the implied covenant might fill.

12

(Citations, punctuation, and footnote omitted.) *In re El Paso Pipeline Partners, L.P. Derivative Litigation*, No. CIV.A. 7141-VCL, 2014 WL 2768782, at *17, 2014 Del. Ch. LEXIS 101, at *57-58 (Del. Ch. June 12, 2014).

Here, the LLC Agreement was not silent on the subject of whether a former employee whose shares had been repurchased was entitled to have the price adjusted in light of a subsequent transaction between Rainmaker and a third party entity reflecting a higher share price; rather, that situation was expressly covered by the Clawback Provision, and thus there was no contractual gap for the implied covenant to fill. And to the extent that any of the express terms in the Clawback Provision were undefined, thereby creating an ambiguity as to whether a transaction fell within the three-month clawback period, the standard rules of contract interpretation would apply to address the matter rather than the implied covenant.[7] See, e.g., *Sunline Commercial Carriers v. Citgo Petroleum Corp.*, 206 A3d 836, 846 (III) (A) (Del. 2019); *Twin City Fire Ins. Co. v. Delaware Racing Assn.*, 840 A2d 624, 628 (1) (Del. 2003). To sustain an implied covenant claim, "the plaintiff must allege a specific

---

[7] Additionally, if Rainmaker took a litigation position regarding the application of the Clawback Provision that was itself frivolous and in bad faith, that would be addressed through a request for attorney fees, not by means of the implied covenant. See *Nationwide Emerging Managers*, 112 A3d at 897 (IV) (E). See generally OCGA § 9-15-14.

13

implied contractual *obligation* and allege how the violation of that obligation denied the plaintiff the fruits of the contract," *Kuroda*, 971 A2d at 888 (II) (E) (emphasis supplied), not simply that the parties' contract has an undefined, ambiguous term. If that were not the case, then implied covenant claims would be applicable in every contract with an ambiguous term and would not be the limited, extraordinary remedy that Delaware courts repeatedly have expressed great hesitancy about applying. See generally *Nemec v. Shrader*, 991 A2d 1120, 1126, 1128 (Del. 2010) (describing the implied covenant as a "cautious enterprise" and a "limited and extraordinary legal remedy") (punctuation and footnote omitted); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A2d 434, 442 (C) (Del. 2005) (application of implied covenant should be "rare" exercise) (punctuation and footnote omitted); *Kuroda*, 971 A2d at 888 (II) (E) ("Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully."); *Cincinnati SMSA L. P. v. Cincinnati Bell Cellular Sys. Co.*, 708 A2d 989, 992 (Del. 1998) (describing "narrow context" giving rise to "occasional necessity of implying . . . terms").

For these reasons, the trial court erred in concluding that Bellack could proceed on his claim for breach of the implied covenant of good faith and fair dealing.

14

Accordingly, we reverse the denial of Rainmaker's motion for summary judgment on the implied covenant claim.

*Judgment reversed. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*